IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTINE P.,[1]

        Plaintiff,

vs.                                          Case No. 18-2338-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**MEMORANDUM AND ORDER**

On March 28, 2014, plaintiff filed an application for social security disability insurance benefits and, on April 7, 2014, plaintiff filed an application for supplemental security income benefits. These applications alleged a disability onset date of August 1, 2012, but plaintiff amended the onset date to December 10, 2014 at her administrative hearing. The applications were denied initially and on reconsideration. An administrative hearing was conducted on June 16, 2016. The administrative law judge (ALJ) considered the evidence and decided on August 30, 2017 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initial is used to protect privacy interests.

1

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010)(internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 10-21).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 11-12). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past

relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through March 31, 2018.  Second, plaintiff has not engaged in substantial gainful activity since August 1, 2012. Third, plaintiff has the following severe impairments: degenerative changes of the lumbar spine; obesity; history of umbilical hernia; history of left knee surgery; history of left shoulder surgery; history of bipolar disorder; posttraumatic stress disorder; personality disorder, and history of polysubstance abuse.  Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Fifth, plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that: plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently, with pushing and pulling limited to the same weights; plaintiff can stand/walk 6 hours total, and sit for 6 hours total, all in an 8-hour workday with normal breaks; plaintiff can occasionally climb stairs, ramps, ladders, and scaffolds; plaintiff can frequently balance and occasionally stoop, kneel, crouch, and crawl; plaintiff can tolerate frequent exposure to extreme cold and vibrations; plaintiff can understand and remember simple instructions; plaintiff can maintain concentration, persistence and pace to complete simple tasks that are not performed at a fast pace; and plaintiff can adapt to normal change in a simple work environment. Finally, the ALJ determined that, although plaintiff cannot perform any past jobs she once was capable of doing, she could perform such jobs as office helper, mail clerk and collator operator. The ALJ further found that these jobs exist in significant numbers in the national and state economy.

III. BORDERLINE INTELLECTUAL FUNCTIONING – STEP TWO ANALYSIS

Plaintiff's first argument to reverse the denial of benefits contends that the ALJ failed consider the impact of plaintiff's borderline intellectual functioning upon plaintiff's RFC and at step two of his analysis. There is no dispute that plaintiff was

5

diagnosed with borderline intellectual functioning in December 2016, several months after the administrative hearing. (Tr. 1454). The ALJ stated that he gave substantial weight to the report containing this diagnosis. (Tr. 19). The ALJ was obligated to discuss uncontroverted evidence which is not relied upon as well as significantly probative evidence that is rejected. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ did not discuss borderline intellectual functioning, explain why he did not consider it a "severe" impairment, or state its impact, if any, upon plaintiff's RFC. This is grounds to reverse the decision to deny benefits, although the court agrees with defendant that the omission of borderline intellectual functioning from the ALJ's step two analysis was inconsequential. As the Tenth Circuit stated in Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016): "[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." Id.

IV. STEP THREE ANALYSIS

    A. Dr. Nguyen's opinion

Plaintiff's next argument is that the ALJ erred in finding at step three that plaintiff did not meet or equal a regulatory listing of impairments which warrants an award of benefits. The ALJ expressly considered listings 1.02 and 1.04 which concern physical impairments, and listings 12.04 and 12.15 which concern

6

mental impairments. (Tr. 13-15). Plaintiff asserts that the ALJ failed to consider the medical opinion of Dr. Kim-Doan Katrina Nguyen when making his decision. Dr. Nguyen stated, in conclusory fashion, that plaintiff met the requirements of listing 12.04 for affective disorders. (Tr. 1305-06).

The court disagrees with plaintiff's position. The ALJ stated that Dr. Nguyen's opinion as to plaintiff's mental impairments was given "little weight" and that "deference" was given to the psychological opinions from other sources as discussed in the opinion. (Tr. 17). In his discussion of the mental impairment listings, the ALJ referred to the opinion of Dr. Kent, a licensed psychologist who performed diagnostic testing upon plaintiff, and the opinion of plaintiff's treating source – Dr. McCleeary, a licensed psychologist. The ALJ acted within his discretion to defer to the opinions of treating and examining specialists in mental health over the opinion of Dr. Nguyen, an internal medicine doctor who did not examine or treat plaintiff. See Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011)(citing relevant factors for weighing a medical opinion). The ALJ also stated that the opinions of the psychological opinions were more consistent with the bulk of the medical evidence and that Dr. Nguyen did not explain how plaintiff met listing 12.04. Although plaintiff disputes this conclusion, she does not explain why it is incorrect.

7

Upon review of the record, the court finds the ALJ's analysis is supported by substantial evidence.

B. Listing 12.04

Plaintiff's next argument is that the ALJ erred in finding that plaintiff does not meet the paragraph B criteria of listing 12.04. The ALJ stated:

> To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means function in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

(Tr. 14). The ALJ found that plaintiff had: moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and moderate limitations in adapting or managing oneself. Id. In support of these findings, the ALJ noted that Dr. Kent did diagnostic testing which showed that plaintiff "could remember and understand simple tasks, rather than ones that are more complex"; that Dr. McLeeary stated that plaintiff had a mild limitation overall in social functioning; that the diagnostic testing showing moderate limitations in concentrating, persisting, or maintaining pace; and that McLeeary and Kent's reports supported a conclusion that

8

plaintiff had a moderate limitation in adapting or managing for herself. (Tr. 14). Because the ALJ found that plaintiff's mental impairments did not produce at least two "marked" limitations or one "extreme" limitation, he found that the paragraph B criteria were not satisfied. Id.

Plaintiff asserts that the ALJ's conclusions are not supported by substantial evidence when one examines other evidence in the record. Plaintiff recounts the results of the battery of tests administered by Dr. Kent. While plaintiff scored quite low in many categories, Dr. Kent's medical source statement, which is based on the testing in part, is consistent with the ALJ's findings as to the mental impairment listings. Plaintiff also mentions Lisa Tate, a consultative examiner who found that plaintiff had deficient memory and concentration. The report plaintiff cites, however, shows that plaintiff's immediate memory was within normal limits, her recent memory was moderately deficient, and her remote memory was within normal limits. (Tr. 21). The same report recorded that plaintiff's concentration was mildly deficient and that her pace, persistence and social functioning was within normal limits. (Tr. 21-22). Plaintiff also refers to Dr. Dave, a treating source, who indicated that plaintiff showed signs of pseudodementia. (Tr. 1151). This evidence is not related to a functional analysis by Dr. Dave and the doctor provides no

9

indication of severity.  Therefore, the court does not believe it counters the substantial evidence in support of the ALJ's analysis.

Plaintiff argues that the ALJ's holding as to plaintiff's ability to interact with others is not supported by substantial evidence, pointing to places in the record showing that plaintiff has isolated herself from others, had extreme reactions during conflicts with other people, and had panic attacks.  The ALJ relied upon plaintiff's treating psychologist, Dr. McLeeary, for his finding regarding interaction with others.  She had been seeing plaintiff for slightly more than a year when she made her report.  Her answers to questions regarding plaintiff's social interactions and ability to adapt in the workplace mostly show only mild limitations, with some moderate limitations. (Tr. 1254).  This is consistent with the answers recorded by Dr. Kent, who indicated only mild limitations in plaintiff's ability to interact with the public, co-workers and supervisors.  (Tr. 1456).  Although Dr. McLeeary reported an angry incident when plaintiff reacted irrationally to a decision to change her medication and stated that "this" would prevent her from participating in gainful employment (Tr. 1250), the court finds that there is substantial evidence in the reports of Dr. Kent and Dr. McLeeary to support the findings the ALJ made in his mental impairment listings analysis, in spite of incidents when plaintiff has had angry outbursts or suicidal ideations or reacted with histrionics.

This conclusion extends to the ALJ's determination that plaintiff has a moderate limitation in concentrating, persisting or maintaining pace. Plaintiff contends the ALJ's decision is inconsistent with the testing results of Dr. Kent. The court disagrees. Dr. Kent's report, which was based on the testing results, showed that plaintiff had marked limitations in understanding and carrying out complex instructions, but only mild limitations in understanding and carrying out simple instructions. (Tr. 1455). The ALJ's conclusion that plaintiff had a "severe limitation", although not one meeting a listing level (Tr. 14), is consistent with this evidence.

Finally, plaintiff contends that plaintiff has marked limitations in adapting or managing herself, rather than the moderate limitations found by the ALJ. Again, the ALJ's findings are supported by the answers recorded by Dr. McLeeary and Dr. Kent. While there may be incidents which suggest a greater limitation, those incidents are not so frequent and intense for the court to find that substantial evidence does not support the ALJ's analysis of whether plaintiff's condition met the requirements of the listings.

V. RFC FINDINGS

   A. Physical RFC

   Plaintiff next contends that the ALJ did not properly assess plaintiff's physical RFC. Plaintiff first argues that the ALJ mischaracterized the evidence when he stated:

   > Medical imagery showed some degenerative changes in the lumbar spine, but on examination the claimant has had normal range of motion and not more than occasional problems with orthopedic maneuvers, and no positive straight leg raising tests.

   (Tr. 18). This statement, according to plaintiff, did not mention that the imagery also showed that plaintiff had grade I anteriolistesis of L5-S1 with apparent bilateral spondylosis at L5, facet hypertrophy and bilateral sacroiliac degenerative joint disease.[2] The ALJ also did not mention some positive straight leg raising tests and tests showing reduced range of motion.

   As the court has previously stated, an ALJ is required to consider all the evidence in the record, but not required to discuss all the evidence; he or she must discuss the evidence supporting the ALJ's decision and discuss the uncontroverted evidence not relied upon as well as the significantly probative evidence that is rejected. Wall, 561 F.3d at 1067. Plaintiff does not claim that the ALJ failed to consider this evidence and

---

[2] This account was from x-rays taken in April 2014. (Tr. 491). Findings from x-rays taken in July 2016 did not report facet hypertrophy, fractures or dislocations, and found only minor changes from degenerative disk disease. (Tr. 1375).

12

plaintiff does not demonstrate that the evidence is so significant that it required discussion. While the statement that there were no positive straight leg raising tests may be mistaken and the record shows some indications of limited range of motion, the court is convinced that these mistakes are inconsequential to the ALJ's ultimate determination in this case and therefore should be viewed as harmless. See Smith v. Berryhill, 2018 WL 5726227 *5 (D.Nev. 7/19/2018)(finding harmless error in omission of two instances of positive straight leg raise where record as a whole indicates that ALJ would have reached the same result). There is no indication that the positive straight leg tests or limited range of motion findings required or likely would have justified a more limited RFC finding in this case.

    Plaintiff also asserts that the ALJ did not properly consider the opinion of Lynnette Sanders, an APRN who treated plaintiff.[3] (Tr. 1243-48). The opinion stated that plaintiff could sit for three hours in an eight-hour workday and stand or walk for one hour. It stated that plaintiff must get up from a seated position every 45 minutes and that she could return to a seated position in 15 to 20 minutes. The opinion also stated that plaintiff could lift up to five pounds frequently and occasionally up to 10 pounds,

---

[3] The questionnaire completed by Sanders was co-signed by Dr. David Huerter. (Tr. 1247).

13

but never more than 10 pounds.[4] The opinion was rendered in early June 2016 approximately one month after plaintiff had had rotator cuff surgery and the ALJ held that the statement did not take into account plaintiff's improvement after the surgery and was contradicted by physical therapy notes and the surgeon's followup, which showed improvement or suggested improvement would happen.[5] (Tr. 17). Later visits to Sanders and others do not mention shoulder pain. E.g., Tr. 1459-1467. A physical therapy discharge statement dated September 8, 2016 stated that plaintiff was able to lift 5 pounds overhead without pain and that plaintiff was 90% towards being able to perform normal activities of daily living without shoulder pain. (Tr. 1384). Plaintiff was discharged to a home exercise program.

The ALJ offered reasonable grounds for discounting Ms. Sanders' opinion. The record entries following Ms. Sanders' opinion indicate improvement in plaintiff's left shoulder condition with physical therapy and time. This evidence and the opinion of Dr. Nguyen provide substantial evidence in support of the ALJ's RFC findings even though those findings differ from those set forth in Ms. Sanders' statement in early June 2016.

---

[4] The statement indicated that plaintiff's primary symptoms were psychiatric; it did not mention back pain as a problem. (Tr. 1244). Later records from Sanders do mention back pain but do not recommend treatment beyond ice, heat, stretches and medication. (Tr. 1331, 1319-20).

[5] Plaintiff also reported lifting and carrying a new grandchild and a three-year old grandchild in June and July 2016. (Tr. 55, 1331).

14

Plaintiff next argues that the physical RFC limits are not supported by substantial evidence. Plaintiff notes that the limits suggested in Ms. Sanders' statement (occasionally lifting 10 pounds; 3 hours work in a seated position; 1 hour in a standing and/or walking position) and the limits suggested by Dr. Nguyen (4 or 6 hours sitting and 4 or 2 hours standing or walking)[6] are not adopted by the ALJ. (Tr. 1245, 1310, 1446). "[T]here is no requirement for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). "'[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" Id., quoting Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ made reference to Dr. Thompson's evaluation (Ex. 11F), plaintiff's normal gait, and plaintiff's dog-walking as supporting his RFC findings. (Tr. 16-17). The court finds this amounts to substantial evidence.

B. Mental RFC

Plaintiff's next argument is that the ALJ did not properly formulate plaintiff's mental RFC. The ALJ found that plaintiff has the ability to understand and remember simple instructions;

---

[6] Dr. Nguyen's responses to the ALJ's interrogatories in this regard are somewhat confusing. But, Dr. Nguyen does state that it was "NOT clear that [plaintiff's] physical limitations were significant or prolonged enough to affect work ability" and that "[b]ased on evaluation/exam by Dr. Randall Thompson on 8/9/14, [plaintiff] should be able to sit normally in an 8-hour day [with] breaks. She may have limitations [with] standing & walking, lifting, carrying weight, bending, stooping, crouching, or squatting." (Tr. 1306, 1446).

15

maintain concentration, persistence and pace to complete simple tasks that are not performed at a fast pace and can adapt to normal change in a simple work environment. (Tr. 15). The ALJ stated that he gave Dr. Kent's opinion substantial weight in reaching his conclusions.

Plaintiff notes, however, that Dr. Kent found that plaintiff's pace of work is "quite impaired" and "markedly impairs [her] performance." (Tr. 1456). Dr. Kent's report stated in part:

> [Plaintiff's] ability in processing simple or routine visual material without making errors is in the extremely low range when compared to her peers. She performed better than approximately 0.3% of her peers on the processing speed tasks. . . . Processing visual material quickly is an ability that she performs poorly as compared to her verbal and nonverbal reasoning ability. Processing speed is an indication of the rapidity with which she can mentally process simple or routine information without making errors.

(Tr. 1451-52). The report also stated: "Her pace is extremely slow and would markedly affect her work functioning" and "[a]t the maximum she would appear capable of tolerating a limited work environment." (Tr. 1453).

Defendant asserts that the ALJ accounted for these findings by limiting plaintiff's RFC to a simple work environment, completing simple tasks not performed at a fast pace. The vocational expert defined work not performed at a fast pace as non-piece work not involving a conveyer belt, without constant physical demands, and giving the plaintiff some control over the

16

pace. (Tr. 419). The vocational expert listed three jobs requiring at least level-two reasoning as satisfying these requirements: office helper, mail clerk and collator operator.

The court finds that the ALJ's mental RFC does not account for Dr. Kent's condition that plaintiff be in a "limited work environment" doing simple work at an "extremely slow" pace. Nor does the ALJ explain why he gave Dr. Kent's report substantial weight, but refused to adopt these conditions. Dr. Kent's conclusions are significantly probative evidence which the ALJ has rejected without giving a reason. The ALJ is not entitled to pick and choose through an uncontradicted medical opinion. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

## VI. VOCATIONAL EXPERT TESTIMONY

Plaintiff's mental RFC ties into the final argument in plaintiff's opening brief.[7] Plaintiff contends that the vocational expert listed three jobs as within plaintiff's RFC, although each job required a level of mental functioning beyond plaintiff's functional capacity. It is agreed by the parties that the jobs listed by the vocational expert required at least level-two reasoning, which is described in Appendix C of the Dictionary of Occupational Titles as:

---

[7] In plaintiff's reply brief, plaintiff raises the issue of whether the ALJ should have considered if plaintiff met the criteria of listing 12.05 intellectual disorder. This appears to be a new argument raised in the reply brief. The court declines to consider it.

17

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

But, the ALJ's RFC findings limited plaintiff to understanding and remembering simple instructions. In these situations, the court has remanded for explanation and resolution of the conflict. <u>Pemberton v. Berryhill</u>, 2017 WL 1492934 *2-3 (D.Kan. 4.26/2017)(where claimant was limited to "simple work"; <u>Tate v. Colvin</u>, 2016 WL 4679942 *7 (D.Kan. 9/7/2016)(where claimant should never be expected to understand, remember or carry out detailed instructions); <u>MacDonald v. Colvin</u>, 2015 WL 4429206 *8 (D.Kan. 7/20/2015)(same); <u>Crabtree v. Colvin</u>, 2015 WL 9473404 *3 (D.Kan. 12/28/2015)(where claimant should never be expected to understand, remember or carry out detailed instructions and job duties must be simple, repetitive and routine in nature).

Defendant argues that the Tenth Circuit's decision in <u>Stokes v. Astrue</u>, 274 Fed.Appx. 675 (10th Cir. 2008) is contrary to plaintiff's argument. The court disagrees. In <u>Stokes</u>, the Tenth Circuit held that an RFC limitation to "simple, repetitive, and routine work" was consistent with level-two reasoning jobs. Here, a greater limitation was described. The ALJ limited plaintiff to "simple tasks" in a "simple work environment" where she was given "simple instructions." (Tr. 15). This description conflicts with vocational expert's testimony which assumed that plaintiff could

perform jobs carrying out "detailed but uninvolved written or oral instructions." This conflict must be reconciled. See <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1175-76 (10th Cir. 2005).

VII. REMAND FOR FURTHER CONSIDERATION

Plaintiff asks that the court reverse and remand for an award of benefits. Although this matter has been pending for a long time, the court believes further administrative consideration would be useful to resolve the issues discussed previously in this order and that the record does not strongly compel an award of benefits. This is not a situation where remand for additional findings would only serve to delay the receipt of benefits. Therefore, the court declines to remand for an award of benefits. See <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006)(discussing factors to consider in deciding whether to remand for an award of benefits).

VIII. CONCLUSION

For the above-stated reasons, the court directs that the decision of the Commissioner is reversed and that judgment shall be entered pursuant to sentence four of 42 U.S.C. § 405(g) remanding the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated this 29th day of January, 2019, at Topeka, Kansas.

                                        s/Sam A. Crow
                                        Sam A. Crow, U.S. District Senior Judge